**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| HENNA CARDENAS, individually and on behalf of a putative class,<br><br>Plaintiffs,<br><br>v.<br><br>SPINNAKER RESORTS, INC.,<br><br>Defendant. | Civil Action No.: 16-2466 (JLL) (JAD)<br><br>**OPINION** |

**LINARES**, District Judge.

Plaintiff Henna Cardenas, on behalf of a proposed class, alleges that Defendant Spinnaker Resorts, Inc. ("Spinnaker") violated the Telephone Consumer Protection Act of 1991, 47 U.S.C. § 227 ("TCPA") via unsolicited telephone calls. (ECF No. 1.) This matter comes before the Court by way of a Motion to Dismiss filed by Spinnaker under Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction. (ECF No. 9.) The Court has considered the parties' submissions and decides this matter without oral argument pursuant to Rule 78 of the Federal Rules of Civil Procedure. For the reasons set forth below, the Court denies the motion.

## BACKGROUND[1]

Spinnaker is a Florida corporation with its headquarters in Hilton Head, South Carolina. (ECF No. 1 ("Compl.") ¶ 7.) Spinnaker develops, markets, and sells resorts located in South Carolina, Missouri, and Florida. (*Id.* ¶ 1.) Spinnaker relies on unsolicited telemarketing as a way to increase its customer base and generate sales for its vacation ownership business. (*Id.* ¶ 11.) Spinnaker and/or its agents made (and continue to make) multiple unsolicited promotional

---

[1] This background is derived from Plaintiff's Complaint, which the Court must accept as true at this stage of the proceedings. *See Alston v. Countrywide Fin. Corp.*, 585 F.3d 753, 758 (3d Cir. 2009).

1

telephone calls to the landline telephones of Plaintiff and other members of the putative Class who are registered on the Do Not Call Registry, allegedly in violation of the TCPA. (*Id.* ¶¶ 2, 13, 15, 31, 32.) Numerous online consumer complaints related to Spinnaker's telemarketing calls have been posted on the internet. (*See id.* ¶¶ 12, 17.)

Plaintiff Cardenas registered her landline phone number on the Do Not Call Registry on February 9, 2010. (*Id.* ¶ 19.) Starting in or around April 2015, Cardenas began receiving multiple calls during the day on her landline telephone from different New Jersey telephone numbers[2] from "telemarketer[s] always identif[ying] themselves as calling from 'Spinnaker Resorts.'" (*Id.* ¶¶ 20, 22; *see also* ECF No. 10-1, Declaration of Henna Cardenas ("Cardenas Decl.") ¶¶ 3–5.) Cardenas estimates that she has received at least 70 unwanted calls since May 2015, and has received as many as four calls per day. (Compl. ¶ 21.) Despite repeatedly telling the caller that she was not interested, that she was on the Do Not Call Registry, and not to call her back again, Cardenas continued (and continues) to received multiple calls weekly. (*Id.* ¶¶ 23–28; Cardenas Decl. ¶¶ 6–7.) Cardenas states she has suffered actual harm in the form of annoyance, nuisance, and invasion of privacy. (Compl. ¶ 30.)

On May 2, 2016, Cardenas commenced this action against Spinnaker by filing a Class Action Complaint[3] alleging four violations of the TCPA. (ECF No. 1.) Plaintiff alleges that this

---

[2] Plaintiff alleges that the following numbers have been identified as calling from Spinnaker: 908-206-8623, 908-222-8013, 908-222-7407, 908-213-1884, 908-206-1351, and 908-213-0955. (*Id.* ¶ 20.)

[3] Cardenas brings this action on behalf of two proposed classes:
  **No Consent-DNC Class**: All individuals in the United States (1) who had his or her telephone number(s) registered with the National Do Not Call Registry for at least thirty days, (2) who thereafter received more than one telephone call made by or on behalf of Defendant Continuum [sic] within a 12-month period starting February 12, 2012 to the present, and (3) for whom Defendant obtained prior express consent to call in the same manner as Defendant claims it obtained consent to call the Plaintiff.

  **Stop Calling Class**: All individuals in the United States (1) who had his or her telephone number(s) registered with the National Do Not Call Registry for at least thirty days; (2) who received more than one telephone call made by or on behalf of Defendant within a 12-month period from April 21,

2

Court has personal jurisdiction over Spinnaker because Spinnaker "conducts a significant amount of business in this District, solicits consumers in this District, made and continues to make unsolicited calls in this District, and because the wrongful conduct giving rise to this case occurred in, was directed to, and/or emanated from this District." (*Id.* ¶ 8.) On July 8, 2016, Spinnaker filed the instant Motion to Dismiss for lack of personal jurisdiction. (*See* ECF No. 12-1 ("Mov. Br.").) On July 18, 2016, Plaintiff filed opposition (ECF No. 10 ("Opp. Br.")) and on July 25, 2016, Spinnaker filed a reply (ECF No. 12 ("Reply Br.")). The matter is now ripe for adjudication.

## LEGAL STANDARD

Once a defendant files a motion to dismiss for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2), the "plaintiff must prove by affidavits or other competent evidence that jurisdiction is proper." *Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324, 330 (3d Cir. 2009) (internal citations omitted). Where, as here, the district court does not hold an evidentiary hearing, a plaintiff need only establish a "'*prima facie* case of personal jurisdiction,'" *Haffen v. Butler Specialities, Inc. et al.*, No. 10-2833, 2011 WL 831933 at *2 (D.N.J. March 3, 2011) (quoting *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 97 (3d Cir. 2004)), and the court "is required to accept the plaintiff's allegations as true, and is to construe disputed facts in favor of the plaintiff." *Metcalfe*, 566 F.3d at 330 (internal citations omitted). Additionally, "[i]f the contents of the plaintiff's complaint conflict with the defendant's affidavits, the district court must construe all reasonable inferences that can be drawn from the papers in the plaintiff's favor." *Haffen*, 2011 U.S. Dist. LEXIS 21581 at *7 (quoting 4 Wright & Miller, *Federal Practice and Procedure:* Civil 3d § 1067.6 (3d ed. 2002)). The plaintiff, however, retains "'the burden of

---

2012 to the present; and (3) who requested that Defendant not call them again (4) and who received at least one additional call from Defendant at least thirty (30) days after the request to stop calling. (*Id.* ¶ 33.)

3

demonstrating that the defendants' contacts with the forum state are sufficient to give the court in personam jurisdiction.' These contacts must be shown 'with reasonable particularity.'" *Wellness Publ'g v. Barefoot*, 128 Fed. App'x 266, 268 (3d Cir. 2005) (brackets and internal citations omitted).

"A federal court sitting in New Jersey has jurisdiction over parties to the extent provided under New Jersey state law." *Miller Yacht Sales*, 384 F.3d at 96. "New Jersey's long-arm statute provides for jurisdiction coextensive with the due process requirements of the United States Constitution." *Id.* (citing N.J. Ct. R. 4:4-4(c)). A district court sitting in New Jersey may therefore exercise personal jurisdiction over a non-resident defendant if the defendant has "certain minimum contacts with [New Jersey] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Henry Heide, Inc. v. WRH Prods. Co., Inc.*, 766 F.2d 105, 108 (3d Cir. 1985) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

"Minimum contacts can be analyzed in the context of general jurisdiction or specific jurisdiction." *Metcalfe*, 566 F.3d at 334. General jurisdiction results from, among other things, "systematic and continuous" contact between a non-resident defendant and the forum state. *Spuglio v. Cabaret Lounge*, 344 F. App'x 724, 725 (3d Cir. 2009). "Specific jurisdiction over a defendant exists when that defendant has 'purposefully directed his activities at residents of the forum and the litigation results from alleged injuries that arise out of or relate to those activities.'" *Miller Yacht Sales*, 384 F.3d at 96 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)).

### A. General Jurisdiction

"'[G]eneral jurisdiction exists when a defendant has maintained systematic and continuous contacts with the forum state.' This is a fact-specific inquiry, and the 'nonresident's contacts to

the forum must be continuous and substantial' to support the exercise of general jurisdiction." *Arpaio v. Dupre*, 527 F. App'x 108, 113 (3d Cir. 2013) (internal citations omitted). In recent years, the United States Supreme Court has offered guidance on the level of "continuous and substantial" contacts that might justify the exercise of general or "all purpose" jurisdiction.

In *Goodyear Dunlop Tires Operations v. Brown*, 564 U.S. 915 (2011), the Court addressed a situation in which the foreign subsidiaries of an American corporation challenged a North Carolina court's exercise of personal jurisdiction over them. A unanimous Court discussed the parameters of general jurisdiction, writing that "[f]or an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile; for a corporation, it is an equivalent place, one in which the corporation is fairly regarded as at home." *Id.* at 924. The Court reiterated the principal that "[a] corporation's 'continuous activity of some sorts within a state' . . . 'is not enough to support the demand that the corporation be amenable to suits unrelated to that activity.'" *Id.* at 927 (quoting *Int'l Shoe Co.*, 326 U.S. at 318). The Court further noted that neither regular purchases of goods from a state nor the sales of goods to a state were sufficient, in themselves, to subject an entity to general jurisdiction on claims unrelated to the sales/purchases. *Id.* at 929 (citing *Helicopteros Nacionales De Colombia v. Hall*, 466 U.S. 408, 418 (1984)). As the Defendant subsidiaries in Goodyear had only "attenuated" contacts with the state (*i.e.*, their products were sold into the state via intermediaries)[4] and were "in no sense at home in North Carolina," the Court found that the subsidiaries were not subject to general jurisdiction in North Carolina's courts. *Id.* at 929.

The Supreme Court confirmed the narrow applicability of the general jurisdiction doctrine

---

[4] The *Goodyear* Court also specified that while the "[f]low of a manufacturer's products into a forum . . . may bolster an affiliation germane to *specific* jurisdiction . . . ties serving to bolster the exercise of specific jurisdiction do not warrant a determination that, based on those ties, the forum has *general* jurisdiction over a defendant." *Id.* at 2855 (emphasis in original).

5

in *Daimler AG v. Bauman*, 134 S. Ct. 746 (2014). In *Daimler*, the Court rejected a formulation of the doctrine that would "approve the exercise of general jurisdiction in every State in which a corporation 'engages in a substantial, continuous, and systematic course of business,'" characterizing that broad definition as "unacceptably grasping." *Id.* at 761 (internal citation omitted). The Court observed that "the inquiry under Goodyear is not whether a foreign corporation's in-forum contacts can be said to be in some sense 'continuous and systematic,' it is whether that corporation's 'affiliations with the State are so 'continuous and systematic' as to render [it] essentially at home in the forum State.'" *Id.* at 761 (quoting *Goodyear*, 564 U.S. at 919). The Court also clarified that "the general jurisdiction inquiry does not 'focus solely on the magnitude of the defendant's in-state contacts.' General jurisdiction instead calls for an appraisal of a corporation's activities in their entirety, nationwide and worldwide. A corporation that operates in many places can scarcely be deemed at home in all of them. Otherwise 'at home' would be synonymous with 'doing business' tests framed before specific jurisdiction evolved in the United States." *Id.* at 762, n.20. The Court ultimately found that there was "no basis to subject Daimler to general jurisdiction in California, for Daimler's slim contacts with the State hardly render it at home there." *Id.* at 760.

### B. Specific Jurisdiction

"Specific jurisdiction is established when a non-resident defendant has 'purposefully directed' his activities at a resident of the forum and the injury arises from or is related to those activities." *Gen. Elec. Co. v. Deutz AG*, 270 F.3d 144, 150 (3d Cir. 2001) (quoting *Rudzewicz*, 471 U.S. at 472). In other words, specific jurisdiction exists where the "cause of action arises out of [the] defendant's forum-related activities, such that the defendant should reasonably anticipate being haled into court in that forum." *Abel v. Kirbaran*, 267 F. App'x 106, 108 (3d Cir. 2008)

(internal citations and quotations omitted).

Three elements must be met to establish specific jurisdiction. *HS Real Co., LLC et al. v. Sher*, 526 F. App'x 203, 206 (3d Cir. 2013). First, "the defendant must have purposefully availed itself of the privilege of conducting activities within the forum." *Id.* (internal citations and quotations omitted). Second, "plaintiffs' claims must arise out of or relate to at least one of the contacts with the forum." *Id.* (internal citations and quotations omitted). Third, the exercise of jurisdiction must comport with "traditional notions of fair play and substantial justice." *O'Connor v. Sandy Lane Hotel Co., Ltd.*, 496 F.3d 312, 316 (3d Cir. 2007).

Because the existence of specific jurisdiction depends on a link between the defendant's activity and the resulting harm, a specific jurisdiction analysis is necessarily claim specific. *Remick v. Manfredy*, 238 F.3d 248, 255 (3d Cir. 2001) ("Such a determination is claim specific because a conclusion that the District Court has personal jurisdiction over one of the defendants as to a particular claim asserted by [plaintiff] does not necessarily mean that it has personal jurisdiction over that same defendant as to [plaintiff]'s other claims.").

## ANALYSIS

Spinnaker generally argues that this Court's assertion of personal jurisdiction over it would violate due process by "forcing it to defend a civil suit in a jurisdiction where it is not licensed to do business, has never transacted business nor engaged in telemarketing, does not employ a sales or marketing staff, does not advertise, owns no property, and does not maintain an office or bank account." (Mov. Br. at 1.)

In opposition, Plaintiff argues that it has sufficiently established personal jurisdiction because Spinnaker admits that it made the calls through its agents or alter egos: "two subsidiary companies that [Spinnaker] controls through common owners, directors, and/or officers—and the

calls were transmitted to consumers in New Jersey." (Opp. Br. at 4–10.) Alternatively, Plaintiff specifically requests that this Court order limited jurisdictional discovery. (*Id.* at 10-12.)

The Court will permit jurisdictional discovery and deny the instant motion without prejudice. "Although the plaintiff bears the burden of demonstrating facts that support personal jurisdiction, courts are to assist the plaintiff by allowing jurisdictional discovery unless the plaintiff's claim is clearly frivolous." *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 456 (3d Cir. 2003) (internal citations and quotations omitted). "If a plaintiff presents factual allegations that suggest with reasonable particularity the possible existence of the requisite contacts between [the party] and the forum state, the plaintiff's right to conduct jurisdictional discovery should be sustained." *Id.* (internal citations and quotations omitted).

At this early stage, Plaintiff has sufficiently alleged with reasonable particularity that personal jurisdiction may exist over Spinnaker via agency principles. "To determine if a subsidiary is acting as an agent of the parent, courts consider: (1) whether the subsidiary is doing business in the forum that would otherwise be performed by the parent; (2) whether there is common ownership of the parent and subsidiary; (3) whether there is financial dependency; and (4) whether the parent interferes with the subsidiary's personnel, disregards the corporate formalities, and/or controls the subsidiary's marketing and operational policies." *Edelson V, L.P. v. Encore Networks, Inc.*, No. 11-5802, 2012 WL 4889439, at *3 (D.N.J. Aug. 13, 2012), *report and recommendation adopted sub nom. Edelson V., L.P. v. Encore Networks, Inc.*, No. CIV. 11-5802, 2012 WL 4891695 (D.N.J. Oct. 12, 2012) (quoting *Dewey v. Volkswagen AG*, 558 F.Supp. 2d 505, 513 (D.N.J. 2008)).

Here, Spinnaker acknowledges that it is a real estate company that owns and sells time share property interests, but states that it does not have any employees, and instead "engages the services of wholly-owned subsidiaries to support the sale of" its property interests. (ECF No. 9-

2, Declaration of Basil W. Matthews ("Matthews Decl.") ¶¶ 7, 9.)  Specifically, Spinnaker states that it "does not conduct telemarketing activities or make telephone calls to solicit sales from potential customers" and that it "does not hire or contract with independent third party marketing vendors to conduct telemarketing activities." (*Id.* ¶¶ 10, 11.)  Instead, Spinnaker states that "[a]ll telemarketing activities directed to potential customers are conducted by Spinnaker's subsidiary corporations Resorts Sales Missouri, Inc., a Missouri corporation, or Resort Sales by Spinnaker, Inc., a South Carolina corporation, or independent telemarketing companies they hire." (*Id.* ¶ 8.)  Spinnaker contends that these subsidiaries "conduct all sales and telemarketing activities involving potential and new customers, including entering agreements with independent third party vendors for marketing and telemarketing services." (ECF No. 12-2, Supplemental Declaration of Basil W. Matthews ("Matthews Supp. Decl.") ¶ 7.)  Furthermore, Spinnaker states that it maintains "separate corporate and financial identities" from its subsidiaries, that it does not control their day-to-day operations, and that the subsidiaries themselves make their own personnel, marketing, and management decisions. (*Id.* ¶¶ 8–13.)  Additionally, Spinnaker states it does not own property in New Jersey, does not maintain an office or bank account in New Jersey, does not have a telephone number or a telephone directory listing in New Jersey, is not licensed to do business in New Jersey and does not have a registered agent there, does not transact business or advertise in New Jersey, and does not pay taxes in or to New Jersey. (Matthews Decl.. ¶¶ 12, 13, 14, 17).

Nevertheless, Plaintiff specifically alleges in her declaration that she received numerous calls at her home in New Jersey, from New Jersey phone numbers, and that "[o]n each call that I answered, the telemarketer identified themselves as calling from 'Spinnaker Resorts.'" (Cardenas Decl. ¶¶ 1–5.)  These allegations directly and significantly relate to the first factor the Court must consider in determining the existence of an agency relationship—whether the subsidiary is doing

9

business in the forum that would otherwise be performed by the parent. *Edelson*, 2012 WL 4889439, at *3. Accepting the allegations before the Court as true and in a light most favorable to Plaintiff, they suggest that this Court may in fact have personal jurisdiction over Spinnaker under agency principles for the calls directed to New Jersey on behalf of Spinnaker. (*See* Opp. Br. at 9 (listing cases where courts have found that an "out-of-state defendant who makes calls to consumers in a forum state in violation of the TCPA have created sufficient minimum contacts so as to subject the defendant to the jurisdiction of courts in the forum state.").)

Plaintiff has suggested the requisite "possible existence" of the requisite contacts needed to entitle her to jurisdictional discovery. *See D'Elia v. Grand Caribbean Co.*, No. 09-1707, 2011 WL 6153704, at *7 (D.N.J. Dec. 12, 2011) ("[C]ourts should generally allow jurisdictional discovery if there is the possibility that jurisdiction may exist[.]"). The Court cannot say at this time that Plaintiff's claim is "clearly frivolous." *Toys "R" Us*, 318 F.3d at 456. Indeed,

> the present issue before the court is not whether Plaintiff has adduced enough such evidence to establish an agency relationship, sufficient to withstand a motion to dismiss. The question is whether Plaintiff has put forward *some competent evidence* to support its contention that [Defendant A] exercises sufficient control over [Defendant B] for purposes of the agency analysis, sufficient to allow jurisdictional discovery.

*E.I. Du Pont de Nemours & Co. v. Heraeus Holding GmbH*, No. 11-773, 2012 WL 4511258, at *15 (D. Del. Sept. 28, 2012) (emphasis in original) (footnote omitted). Again, accepting all allegations in a light most favorable to Plaintiff, the Court finds that Plaintiff has sufficiently set forth "some competent evidence"—specifically that all of the callers identified themselves as calling from "Spinnaker Resorts" in an effort to sell Spinnaker properties, from New Jersey numbers, to New Jersey residents—to entitle her to jurisdictional discovery. The Court agrees that there exist vital "outstanding questions regarding Spinnaker's oversight and knowledge of the

calls, Spinnaker's control over how the calls were made, and other issues related to Spinnaker's relationships—contractual and otherwise—with its subsidiaries" (Opp. Br. at 6) which need to be fleshed out before the Court can rule on whether it has personal jurisdiction over Spinnaker. To be clear, the Court is not making any findings at this time as to whether personal jurisdiction over Spinnaker will ultimately be found; rather, the Court merely finds that Plaintiff has alleged enough to entitle her to jurisdictional discovery in order to aid the Court in resolving the issue in due course.

Accordingly, the Court shall deny Defendant's Motion to Dismiss for lack of personal jurisdiction without prejudice with right to refile after completion of jurisdictional discovery.

## CONCLUSION

For the reasons above, the Court denies Spinnaker's Motion to Dismiss without prejudice. An appropriate Order accompanies this Opinion.

DATED: August 3rd, 2016

JOSE L. LINARES
UNITED STATES DISTRICT JUDGE