NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| HENNA CARDENAS, *individually and on behalf of a putative class*, <br><br> Plaintiffs, <br><br> v. <br><br> SPINNAKER RESORTS, INC., <br><br> Defendant. | Civil Action No.: 16-2466 (JLL) <br><br> **OPINION** |

**LINARES**, Chief District Judge.

This matter comes before the Court by way of Defendant Spinnaker Resorts, Inc.'s ("Spinnaker") Motion to Dismiss the Plaintiff's Complaint (ECF No. 1 ("Compl.")) pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure for lack of personal jurisdiction. (ECF No. 25). Plaintiff Henna Cardenas has submitted an opposition (ECF No. 29), to which Defendant has replied (ECF No. 31). The Court decides this matter without oral argument pursuant to Rule 78 of the Federal Rules of Civil Procedure. For the reasons set forth below, the Court grants the Motion to Dismiss.

## I. BACKGROUND[1]

Plaintiff Cardenas, on behalf of a proposed class, alleges that Defendant violated the Telephone Consumer Protection Act of 1991, 47 U.S.C. § 227 ("TCPA") by making unsolicited telephone

---

[1] This background is derived from Plaintiff's Complaint (ECF No. 1), which the Court must accept as true at this stage of the proceedings. *See Alston v. Countrywide Fin. Corp.*, 585 F.3d 753, 758 (3d Cir. 2009).

1

calls. (Compl. ¶ 2). Defendant is a Florida corporation with its headquarters in Hilton Head, South Carolina, and purportedly, relies on unsolicited telemarketing as a way to increase its customer base and generate sales for its vacation ownership business. (Id. ¶¶ 1, 11). Defendant and/or its agent made (and continue to make) multiple unsolicited promotional calls to the landline telephones of Plaintiff, and other members of the putative class, who are registered on the "Do Not Call Registry," allegedly in violation of the TCPA. (Id. ¶¶ 2, 13, 15, 31, 32). Recipients of said phone calls have placed numerous online consumer complaints regarding said conduct. (Id. ¶¶ 12, 17).

Plaintiff registered her landline phone number on the Do Not Call Registry on February 9, 2010. (Id. ¶ 19). Starting in or around April 2015, Plaintiff began receiving multiple calls during the day on her landline telephone from different New Jersey telephone numbers[2] from "telemarketer[s] always identif[ying] themselves as calling from 'Spinnaker Resorts.'" (Id. ¶¶ 20, 22; *see also* ECF No. 10-1, Declaration of Henna Cardenas ("Cardenas Decl.") ¶¶ 3-5). Plaintiff estimates that she has received at least 70 unwanted calls since May 2015, and has received as many as four calls per day. (Compl. ¶ 21). Despite repeatedly telling the caller that she was not interested, was on the "Do Not Call Registry," and not to call her back again, Plaintiff continued (and continues) to receive multiple calls a week. (Id. ¶¶ 23-28; Cardenas Decl. ¶¶ 6-7). Plaintiff claims that she has suffered actual harm in the form of annoyance, nuisance, and invasion of privacy. (Compl. ¶ 30).

On May 2, 2016, Plaintiff commenced this action against Spinnaker by filing a class action Complaint[3] alleging four violations of the TCPA. (*See generally* Compl.). Plaintiff alleges that

---
[2] Plaintiff alleges that the following numbers have been identified as calling from Spinnaker: 908-206-8623; 908-222-8013; 908-222-7407; 908-213-1884; 908-206-1351; and 908-213-0955. (Id. ¶ 20).
[3] Cardenas brings this action on behalf of two proposed classes:

2

this Court has personal jurisdiction over Spinnaker because Spinnaker "conducts a significant amount of business in this District, solicits consumers in this District, made and continues to make unsolicited calls in this District, and because the wrongful conduct giving rise to this case occurred in, was directed to, and/or emanated from this District." (Id. ¶ 8). On July 8, 2016 Spinnaker filed a Motion to dismiss for lack of personal jurisdiction. (ECF No. 9). Plaintiff opposed this motion on July 18, 2016 (ECF No. 10) and on July 25, 2016 Spinnaker replied (ECF No. 12). On August 3, 2016 this Court denied Defendant's Motion to Dismiss on the basis that Plaintiff had alleged enough facts to entitle her to jurisdictional discovery. (ECF No. 13). Thereafter, jurisdictional discovery commenced in order to determine whether a basis exists for this Court to exercise personal jurisdiction over Spinnaker.

On May 19, 2017 discovery concluded and on June 9, 2017 Defendant filed the instant Motion to Dismiss for lack of personal jurisdiction. (ECF No. 25). On July 3, 2017, Plaintiff opposed this Motion (ECF No. 29) and Defendant responded on July 24, 2017 (ECF No. 31).

## II. LEGAL STANDARD

Once a defendant files a motion to dismiss for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2), the "plaintiff must prove by affidavits or other competent evidence that jurisdiction is proper." *Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324, 330 (3d Cir. 2009) (internal citations omitted). Where, as here, the district court does not hold an

---

**No Consent-DNC Class**: All individuals in the United States (1) who had his or her telephone number(s) registered with the National Do Not Call Registry for at least thirty days, (2) who thereafter received more than one telephone call made by or on behalf of Defendant Continuum [sic] within a 12-month period starting February 12, 2012 to present, and (3) for whom Defendant obtained prior express consent to call in the same manner as Defendant claims it obtained consent to call on the Plaintiff.
**Stop Calling Class**: All individuals in the United States (1) who had his or her telephone number(s) registered with the National Do Not Call Registry for at least thirty days; (2) who received more than one telephone call made by or on behalf of Defendant within a 12-month period from April 21, 2012 to present; (3) who requested that Defendant not call them again; (4) and who received at least one additional call from Defendant at least thirty days after the request to stop calling. (Compl. ¶ 33).

evidentiary hearing, a plaintiff need only establish a "prima facie case of personal jurisdiction and the plaintiff is entitled to have its allegations taken as true and all factual disputes drawn in its favor." *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 97 (3d Cir. 2004). Additionally, "[i]f the contents of the plaintiff's complaint conflict with the defendant's affidavits, the district court must construe all reasonable inferences that can be drawn from the papers in the plaintiff's favor." *Haffen v. Butler Specialties, Inc.*, 2011 WL 831933, *2 (D.N.J. Mar. 3, 2011) (quoting 4 Wright & Miller, Federal Practice and Procedure: Civil 3d 1067.6 (3d ed. 2002)). The plaintiff, however, retains "the burden of demonstrating that the defendants' contacts with the forum state are sufficient to give the court in personam jurisdiction." *Mesalic v. Fiberfloat Corp.*, 897 F.2d 696, 699 (3d Cir. 1990). "These contacts must be shown 'with reasonable particularity.'" *Wellness Publ'g v. Barefoot*, 128 F. App'x 266, 268 (3d Cir. 2005) (quoting *Mellon Bank v. Farino*, 960 F.2d 1217, 1223 (3d Cir. 1992)).

"A federal court sitting in New Jersey has jurisdiction over parties to the extent provided under New Jersey state law." *Miller Yacht Sales, Inc.*, 384 F.3d at 96 (3d Cir. 2004). "New Jersey's long-arm statute provides for jurisdiction coextensive with the due process requirements of the United States Constitution." *Id.* (citing N.J. Ct. R. 4:4-4(c)). A district court sitting in New Jersey may therefore exercise personal jurisdiction over a non-resident defendant if the defendant has "certain minimum contacts with [New Jersey] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Henry Heide, Inc. v. WRH Prods. Co., Inc.*, 766 F.2d 105, 108 (3d Cir. 1985) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

"Minimum contacts can be analyzed in the context of general jurisdiction or specific jurisdiction." *Metcalfe*, 566 F.3d at 334. "General jurisdiction results from, among other things,

'systematic and continuous' contact between a non-resident defendant and the forum state." *Spuglio v. Cabaret Lounge*, 344 F. App'x 724, 725 (3d Cir. 2009) (quoting *Int'l Shoe*, 326 U.S. at 320. "Specific jurisdiction over a defendant exists when that defendant has 'purposefully directed his activities at residents of the forum and the litigation results from alleged injuries that arise out of or relate to those activities.'" *Miller Yacht Sales*, 384 F.3d at 96 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)).

### A. General Jurisdiction

"'[G]eneral jurisdiction exists when a defendant has maintained systematic and continuous contacts with the forum state.' This is a fact-specific inquiry, and the 'nonresident's contacts to the forum must be continuous and substantial' to support the exercise of general jurisdiction." *Arpaio v. Dupre*, 527 F. App'x 108, 113 (3d Cir. 2013) (internal citations omitted). In recent years, the United States Supreme Court has offered guidance on the level of "continuous and substantial" contacts that might justify the exercise of general or "all purpose" jurisdiction.

In *Goodyear Dunlop Tires Operations v. Brown* the Court addressed a situation in which the foreign subsidiaries of an American corporation challenged a North Carolina court's exercise of personal jurisdiction over them. 131 S. Ct. 2846 (2011). A unanimous Court discussed the parameters of general jurisdiction, writing that "[f]or an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile; for a corporation, it is an equivalent place, one in which the corporation is fairly regarded as at home." *Id.* at 2853-54. The Court reiterated the principal that "[a] corporation's 'continuous activity of some sorts within a state' . . . 'is not enough to support the demand that the corporation be amenable to suits unrelated to that activity.'" *Id.* at 2856 (quoting *Int'l Shoe Co.*, 326 U.S. at 318). The Court further noted that neither regular purchases of goods from a state nor the sales of goods to a state were sufficient, in

themselves, to subject an entity to general jurisdiction on claims unrelated to the sales/purchases. *Id.* at 2856-57 (citing *Helicopteros Nacionales De Colombia v. Hall*, 466 U.S. 408, 418 (1984)). As the Defendant subsidiaries in *Goodyear* had only "attenuated" contacts with the state (*i.e.*, their products were sold into the state via intermediaries)[4] and were "in no sense at home in North Carolina," the Court found that the subsidiaries were not subject to general jurisdiction in North Carolina's courts. *Id.* at 2857.

The Supreme Court confirmed the narrow applicability of the general jurisdiction doctrine in *Daimler AG v. Bauman*, 134 S. Ct. 746 (2014). In *Daimler*, the Court rejected a formulation of the doctrine that would "approve the exercise of general jurisdiction in every State in which a corporation 'engages in a substantial, continuous, and systematic course of business,'" characterizing that broad definition as "unacceptably grasping." *Id.* at 761 (internal citation omitted). The Court observed that "the inquiry under *Goodyear* is not whether a foreign corporation's in-forum contacts can be said to be in some sense 'continuous and systematic,' it is whether that corporation's 'affiliations with the State are so 'continuous and systematic' as to render it essentially at home in the forum State.'" *Id.* at 761 (quoting *Goodyear*, 131 S. Ct. at 2851). The Court also clarified that "the general jurisdiction inquiry does not 'focus solely on the magnitude of the defendant's in-state contacts.' General jurisdiction instead calls for an appraisal of a corporation's activities in their entirety, nationwide and worldwide. A corporation that operates in many places can scarcely be deemed at home in all of them. Otherwise 'at home' would be synonymous with 'doing business' tests framed before specific jurisdiction evolved in the United States." *Id.* at 762, n. 20. The Court ultimately found that there was "no basis to subject

---

[4] The *Goodyear* Court also specified that while the "[f]low of a manufacturer's products into a forum . . . may bolster an affiliation germane to *specific* jurisdiction . . . ties serving to bolster the exercise of specific jurisdiction do not warrant a determination that, based on those ties, the forum has *general* jurisdiction over a defendant." *Id.* at 2855 (emphases in original).

Daimler to general jurisdiction in California, for Daimler's slim contacts with the State hardly render it at home there." *Id.* at 760, 761-62.

### B. Specific Jurisdiction

"Specific jurisdiction is established when a non-resident defendant has 'purposefully directed' his activities at a resident of the forum and the injury arises from or is related to those activities." *Gen. Elec. Co. v. Deutz AG*, 270 F.3d 144, 150 (3d Cir. 2001) (quoting *Burger King*, 471 U.S. at 472). In other words, specific jurisdiction exists where the "cause of action arises out of [t]he defendant's forum-related activities, such that the defendant should reasonably anticipate being haled into court in that forum." *Abel v. Kirbaran*, 267 F. App'x 106, 108 (3d Cir. 2008) (internal citations and quotations omitted).

Three elements must be met to establish specific jurisdiction. *HS Real Co., LLC v. Sher*, 526 F. App'x 203, 206 (3d Cir. 2013). First, the defendant must have purposefully availed itself of the privilege of conducting activities within the forum. *Id.* Second, "plaintiffs' claims must arise out of or relate to at least one of the contacts with the forum." *Id.* (internal citations and quotations omitted). Third, the exercise of jurisdiction must comport with traditional notions of fair play and substantial justice. *O'Connor v. Sandy Lane Hotel Co., Ltd.*, 496 F.3d 312, 317 (3d Cir. 2007).

Because the existence of specific jurisdiction depends on a link between the defendant's activity and the resulting harm, a specific jurisdiction analysis is necessarily claim specific. *Remick v. Manfredy*, 238 F.3d 248, 255 (3d Cir. 2001) ("Such a determination is claim specific because a conclusion that the District Court has personal jurisdiction over one of the defendants as to a particular claim asserted by [plaintiff] does not necessarily mean that it has personal jurisdiction over that same defendant as to [plaintiff]'s other claims.").

7

## III. ANALYSIS

Defendant contends that this Court does not have personal jurisdiction over it because Spinnaker is "not 'at home'" and "lacks minimum contacts [with the forum], either directly or under agency principles." (ECF No. 25 at 6). Specifically, Defendant argues that jurisdictional discovery proves that neither Resort Sales Missouri, Inc. nor Resort Sales by Spinnaker, Inc. (collectively, the "Resort Sales Companies"), the companies responsible for marketing Spinnaker's timeshares, are agents of Spinnaker for the purposes of jurisdiction. (Id.). Defendant further contends that even if the Resort Sales Companies were agents of Spinnaker, Plaintiff fails to show that either company made the calls in question. (ECF No. 31 at 7).

In opposition, Plaintiff argues that the Court can exercise jurisdiction over Defendant pursuant to an agency theory "because the subsidiaries conduct business in this District on Spinnaker's behalf, there is common ownership, Spinnaker supports its subsidiaries financially, and Spinnaker controls its subsidiaries' affairs." (ECF No. 29 at 12). Plaintiff concedes that this Court does not have general jurisdiction over Spinnaker and/or its subsidiaries (ECF No. 29 at 23), thus the Court will only address specific jurisdiction.

In terms of specific jurisdiction, Defendant is a Florida corporation with its headquarters in South Carolina (Compl. ¶ 1) and allegedly does not have employees. (ECF No. 9-2, Declaration of Basil W. Matthews ("Matthews Decl.") ¶¶ 7, 9). Moreover, Defendant "does not conduct telemarketing activities or make telephone calls to solicit sales from potential customers." (Id. ¶¶ 10, 11). Instead, Defendant contends that "[all] telemarketing activities directed to potential customers are conducted by Spinnaker's subsidiary corporations Resort Sales Missouri, Inc., a Missouri Corporation, or Resort Sales by Spinnaker, Inc., a South Carolina corporation, or independent telemarketing companies they hire." (Id. ¶ 8). Further, Defendant is not registered to

do business in New Jersey and "solicits no business there." (ECF No. 25 at 18). Thus, since Defendant itself did not make the calls in question to Plaintiff, and Plaintiff fails to allege other ways in which Defendant purposefully availed itself of the forum, the Court does not have specific jurisdiction over Defendant. *See J. McIntyre Mach, Ltd. v. Nicastro*, 564 U.S. 873, 886 (2011). Instead, the Court must consider if an agency relationship exists between Defendant and the Resort Sales Companies.

The Court finds that the Resort Sales Companies are not agents of Defendant for jurisdictional purposes and, moreover, even if they were, Plaintiff has failed to allege that the Resort Sales Companies made the unsolicited phone calls in question thus invalidating any agency argument. "To determine if a subsidiary is acting as an agent of the parent, courts consider (1) whether the subsidiary is doing business in the forum that would otherwise be performed by the parent; (2) whether there is common ownership of the parent and subsidiary; (3) whether there is financial dependency; and (4) whether the parent interferes with the subsidiary's personnel, disregards the corporate formalities, and/or controls the subsidiary's marketing and operational policies." *Edelson V., L.P. v. Encore Networks, Inc.*, 2012 WL 4891696, *3 (D.N.J. Oct. 12, 2012) (quoting *Dewey v. Volkswagen AG*, 558 F. Supp. 2d 505, 513 (D.N.J. 2008)).

Plaintiff claims the first requirement of agency is met because the Resort Sales Companies solicited business in New Jersey on behalf of Defendant, who would otherwise have had to solicit such business itself. (ECF No. 29 at 14). The record shows that the absence of the Resort Sales Companies does not necessarily mean that Defendant performed the call itself since it could turn to independent contractors—and in fact has already done so in part. Additionally, Defendant is a real estate company but Plaintiff does not allege that said subsidiaries are authorized to make real estate transactions on Defendant's behalf. "Therefore, 'because it cannot be said that [the

subsidiary] can do all of the business [the parent] could do were its own officials present in [New Jersey], an agency relationship did not exist." *Seltzer v. I.C. Optics, Ltd.*, 339 F. Supp. 2d 601, 610 (D.N.J. 2004) (internal quotations omitted). As for the second factor, common ownership of the parent and subsidiary, Defendant concedes that the Resort Sales Companies are "wholly-owned subsidiaries of Spinnaker." (ECF No. 31 at 10). However, "forum contacts of a subsidiary corporation will not be imputed to a parent corporation without a showing of something more than mere ownership." *Leo v. Kerr-McGee*, 1996 WL 254054, *5 (D.N.J. May 10, 1996) (quoting *Pfundstein v. Omnicom Group, Inc.*, 285 N.J. Super. 245, 252 (App. Div. 1995)). Thus, common ownership of Defendant and the Resort Sales Companies alone is not dispositive.

The third factor, financial dependency, is also not met here. A subsidiary is dependent if it "needs financial support from its parent on a regular basis or for expenses other than the strategic acquisitions of other corporations." *Quality Int'l Packaging, LTD. v. Chamilia, Inc.*, 2015 WL 4749156, *6 (D.N.J. Aug. 5, 2015). However, Defendant points out that the Resort Sales Companies each have separate and various bank accounts (ECF No. 31 at 12; ECF No. 25-2 Declaration of Steven F. Gooby ("Gooby Decl."), Exs. 7, 13), and credit card merchant accounts, which shows that the Resort Sales Companies receive revenue from sources other than just Defendant. (Gooby Decl., Exs. 8, 14). Thus, the Court is not persuaded that the Resort Sales Companies are financially dependent on Defendant.

Finally, the Court must determine "whether the parent interferes with the subsidiary's personnel, disregards the corporate formalities, and/or controls the subsidiary's marketing and operational policies." *Edelson*, 2012 WL 4891696 at *3. Plaintiff first asserts that Defendnat exerts control through its shared corporate officers with its subsidiaries.[5] However, as noted above,

---

[5] Plaintiff also asserts both Defendnat and the Resort Sales Companies have the same Executive Director of Sales and Marketing, Shawn Oliver, despite Spinnaker's assertions to the contrary (ECF No. 29 at 20). Plaintiff relies on a

10

the existence of common officers between a parent and a subsidiary does not establish control. *Leo*, 1996 WL 254054 at *5. Plaintiff also argues that Spinnaker controls the Resort Sales Companies because it extended its contract with Southwind Management Corporation to provide payroll and human resources to cover the Resort Sales Companies thereby making personnel and operational decisions on their behalf. (ECF No. 29 at 22). However, this connection is tenuous at best and merely shows that the Resort Sales Companies and Spinnaker utilize the same third-party company for certain services. It does not prove that Defendant "controls the subsidiary's marketing and operational policies." *Edelson*, 2012 WL 4891696 at *3.

The Court is not satisfied with Plaintiff's argument that agency exists between the Resort Sales Companies and Defendant and thus will not impute the former's contacts with New Jersey to the latter. Even if Plaintiff had satisfactorily established agency, Plaintiff fails to allege that the Resort Sales Companies made the unsolicited telephone calls that gave rise to this action. The Complaint clearly attributes the telephone calls to Defendant, not to its subsidiaries and Plaintiff has not attempted to amend it. (Compl. 1 ¶¶ 2, 13, 15, 31, 32). Furthermore, during jurisdictional discovery, after Plaintiff subpoenaed the Resort Sales Companies (Gooby Decl., Exs. 5, 11), both Resort Sales Companies denied making the calls in question to Plaintiff. (Gooby Decl., Ex. 12 at Nos. 6-10; Gooby Decl. Ex. 6 at Nos. 6-10). Defendant contends that these responses demonstrate that any telemarketing calls to Plaintiff must have come from independent telemarketing companies, not its subsidiaries. The Court finds that Plaintiff has failed to show that the Resort Sales Companies made the alleged phone calls. Since Plaintiff's argument for specific personal jurisdiction is based on the premise that the Resort Sales Companies made telephone calls to

---

caption from Spinnaker's website proclaiming Oliver to be said Director of Defendant. Defendant responds that the caption was in error and the subpoenaed payroll records clearly show that Oliver works for Resort Sales by Spinnaker not for Defendant. (ECF No. 31 at 14). Since this argument is really just an elaboration of Plaintiff's assertion that the Resort Sales Companies and Defendant have common ownership, the Court need not address it further.

Plaintiff and other class members, Plaintiff's failure to show that the Resort Sales Companies made such calls defeats its jurisdictional argument. Accordingly, even if the Resort Sales Companies are agents of Defendant, the Court cannot have specific personal jurisdiction over Defendant without the requisite minimum contacts with the forum.

## IV. CONCLUSION

For the aforementioned reasons, Defendant's Motion to Dismiss the Complaint is hereby granted. An appropriate Order accompanies this Opinion.

DATED: August 3rd, 2017

JOSE L. LINARES
Chief Judge, United States District Court